UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-14069-CR-MOORE/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC MARTIN MATTHEWS,

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS

Defendant, Eric Martin Matthews, plead guilty to using a computer to attempt to entice a minor to engage in sexual activity, and distribution of child pornography via a computer, and is currently serving a term of imprisonment for those crimes. Years after his 2007 conviction Matthews filed three motions that seek to overturn his conviction and sentence: (1) Motion Pursuant to *Brady v. Maryland*,[1] (2) Motion to Withdraw [Guilty] Plea, and (3) Motion to Throw Out All Evidence against him (collectively, the "Motions"). (ECF Nos. 103, 104, 108). The Honorable K. Michael Moore referred the motions to me for a report and recommendation (ECF No.109) and the motions are fully briefed. (ECF Nos. 111, 122). For the reasons that follow I recommend that the Court deny all three motions.

---

[1] 373 U.S. 83 (1963).

1

## I. BACKGROUND

State authorities arrested Matthews on state charges on September 29, 2006, and a few weeks later the prosecution shifted to this Court with the filing of a Criminal Complaint. (ECF No. 1). A federal grand jury later charged Matthews with a four count Indictment:

- Count I for "using a facility and means of interstate commerce, that is *Yahoo!*, an internet service company" to knowingly persuade, induce, entice or coerce a minor to engage in sexual activity, in violation of Title 18, United States Code, Section 2422(b);

- Counts II and III for "using a facility, a computer, and means of interstate commerce, that is, *Yahoo!*, an internet service company" to knowingly transfer or attempt to transfer obscene material to a minor, in violation of Title 18, United States Code, Section 1470; and

- Count IV for knowingly distributing child pornography "that had been shipped or transported in interstate commerce, by any means, including by computer," in violation of Title 18, United States Code, Section 2252(a)(2).

(ECF No. 10).

### A. Matthews' Crimes

The prosecution of Matthews arose from an online child exploitation investigation conducted by an undercover senior special agent with the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), Brian P. Ray. (ECF No. 1 at ¶¶ 1, 5, 6). Matthews contacted Agent Ray's undercover female profile, "Laurie," in a bisexual *Yahoo!* chat room. (*Id.* at ¶ 7). After "Laurie" responded that she was thirteen years of age, Matthews engaged in sexually explicit communications with Agent Ray's undercover profile in the chat room. (*Id.* at ¶¶ 8-13). Matthews expressed his desire to

2

engage in sexual intercourse with "Laurie" and arranged to meet her at a particular location in Port St. Lucie, Florida to engage in sexual conduct. (*Id*. at ¶ 15). During their chats, Matthews sent "Laurie" at least one image of child pornography, namely, a prepubescent female with her legs spread open to the camera, exposing her vagina, and stated that he previously had a 14-year old girlfriend with whom he engaged in sexual intercourse. (*Id*. at ¶ 14, 17).

Agents from ICE and officers of the Port St. Lucie Police Department arrested Matthews when he arrived at the scheduled meeting with "Laurie". (*Id*. at ¶ 18). After advising Matthews of his *Miranda* rights, Matthews admitted that he used the computer in his home in Jacksonville, Florida to communicate with and send images to "Laurie," and stated there would be images and a video clip of child pornography on his home computer. (*Id*.). Matthews also admitted to previously meeting a real 14-year old girl for the purpose of having sexual intercourse with her, and that he had sexually explicit online chats with hundreds of children. (*Id*.).

    B.    <u>The Search Warrant for Matthews' Residence</u>

Following his arrest, a judge in the Fourth Judicial Circuit in and for Duval County, Florida issued a search warrant for Matthews' residence. (ECF No. 108 at 13-15). The search warrant applicant, Jacksonville Sheriff's Office Detective Kurt M. Jones, submitted an affidavit to the Court. (*Id*. at 7-12). Detective Jones stated that Agent Ray described his investigation to Detective Jones both verbally and in writing, and asked him to assist in the investigation of Matthews. (*Id*. at 9). The affidavit set forth Agent Ray's firsthand account

3

of Matthews' *Yahoo!* chats with "Laurie," including Matthews' planned meeting to have sexual intercourse with "Laurie" and his transmission of child pornography. (*Id*. at 9-11). The affidavit also stated that two days before Matthews' arrest an undercover ICE agent visited Matthews at his home where he observed Matthews' computer in the living room with a web camera attached. (*Id.* at 11). The affidavit also set forth Matthews' post-*Miranda* admissions that: (i) he used his home computer to communicate with and send images to "Laurie," (ii) there would be images and a video clip of child pornography on his home computer; (iii) he previously met a real 14-year old girl for the purpose of having sex with her; (iv) he engaged in sexually explicit online chats with "hundreds" of children; and (v) the "messaging archive" feature of the *Yahoo!* chat client on his computer was turned on. (*Id.*).

The search warrant was executed at Matthews' home and his computer seized. (ECF No. 111-7 at 12, *Transcript of Change of Plea Hearing*). A forensic examination of Matthews' computer revealed his online chats with "Laurie" and 34 images of child pornography. (*Id.*; *see also Presentence Investigation Report* at ¶ 13). The examination also revealed conversations between Matthews and the real minor female he admitted to meeting for sex, and those conversations confirmed that Matthews engaged in sexual intercourse with her when she was 13 years old. (*Presentence Investigation Report* at ¶ 13).

It is unclear from the record whether the government provided a copy of the search warrant and supporting affidavit to Matthews' counsel. It is clear, however, that Matthews and his defense counsel knew of the search warrant: the Government's Response to

4

Standing Discovery Order advised that "[t]he computer forensic report of the seized computers can be reviewed at the discovery conference," (ECF No. 19 at 2, ¶ 6), and the government stated during its factual proffer at Matthews' change of plea hearing that "[a] search warrant was conducted on the defendant's home in Jacksonville." (ECF No. 111-7 at 12). Matthews did not move to suppress evidence seized pursuant to the search warrant, and makes no argument now that his counsel should have done so.

    C.    <u>Matthews' Guilty Plea</u>

As mentioned, Matthews pled guilty to Counts I and IV of the Indictment, which charged him with using the internet to attempt to persuade or entice a minor to engage in sexual activity, in violation of Title 18 U.S.C.§ 2422(b), and distributing a visual depiction that had been shipped or transported in interstate commerce of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). (ECF No. 23). Before he was sentenced, Matthews filed *pro se* motions to terminate his counsel, proceed *pro se* and withdraw his guilty plea. (ECF Nos. 34, 35, 36). United States Magistrate Judge Frank J. Lynch, Jr. held a hearing on those motions on February 28, 2007. (ECF No. 111-8).

Matthews filed those motions after he read the Sentencing Guideline calculation in the Presentence Investigation Report, which included a five-level enhancement for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor…." (*Presentence Investigation Report* at ¶ 23). The proposed enhancement was based upon "[i]nvestigation by the government [which] confirmed the defendant previously engaged in sexual conduct with a 13 year old female child." (*Id*.). Counsel and

5

Matthews explained at the hearing that when Matthews pled guilty, they had not anticipated this sentencing enhancement. Matthews told the Court that he was unhappy that he had pled guilty unaware that his Sentencing Guideline range was likely to be much higher than he and his attorney had estimated. (ECF No. 111-8 at 8). Matthews' counsel confirmed, however, that Matthews' prior sexual encounter with a 13 year old girl was "not new information" to him or Matthews. *Id.*; *see also* (ECF No. 47 at ¶ 2, *Report and Recommendation*). And, Matthews made clear that he "never denied his guilt" for the crimes to which he pled guilty. (ECF No. 111-8 at 28; ECF No. 47 at ¶ 5). At the conclusion of the hearing, Matthews withdrew all three motions. (ECF No. 111-8 at 26-27).[2] Notably, in his motions and at the hearing Matthews never claimed he was unaware of the search of his home pursuant to the search warrant, and the seizure of evidence from his computer of this prior sexual encounter.

D.  Post-Conviction Proceedings

On March 8, 2007, the Court sentenced Matthews to serve 262 months of imprisonment on Count I and 240 months on Count IV, to run concurrently. (ECF No. 53). In 2008, Matthews filed an unsuccessful petition pursuant to 28 U.S.C. § 2255 to vacate his sentence. (*See Matthews v. United States*, Case No. 08-cv-14030, at ECF Nos 1, 2, 26,

---

[2] In his report, Judge Lynch recommended that the Court deny Matthews' motions to terminate his attorney, proceed *pro se* and withdraw his guilty plea. (ECF No. 47). Matthews asserts that there "was no final decision" on those motions because Judge Moore did not enter an order adopting the Report and Recommendation. (ECF No. 104 at 1). Matthews, however, clearly withdrew his motions, which made unnecessary the recommendation that the Court deny them.

6

28). Matthews raised only one argument in that petition, that trial counsel was ineffective for failing to ask the Court to impose a downward variance "to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct." (*Id*. at ECF No. 2 at 1). The Eleventh Circuit declined to issue a certificate of appealability, and the Supreme Court denied certiorari. (*Id*. at ECF Nos. 31, 32).

In 2017, Matthews filed an unsuccessful Motion for Relief Under the All Writs Act. (ECF No. 62). Matthews argued that the United States Congress improperly passed the laws under which he was convicted. (ECF No. 102 at 3). The Court recognized that Matthews' motion was effectively a collateral attack his conviction and sentence that properly would have to be brought under 28 U.S.C. § 2255. The Court noted that any §2255 motion would fail because Matthews "previously filed an unsuccessful § 2255 motion and he has not been granted leave under 28 U.S.C. § 2244(b)(3)(A) to file a second or successive motion." (*Id*. at 5) (citation omitted). The Court also concluded that even if Matthews could pursue his motion under the All Writs Act, it would still fail because he "failed to present any reason…for waiting over ten years to file the instant petition after his conviction became final." (*Id*. at 6).

E.     The Pending Motions

The motions now before the Court are Matthews' latest attempt to attack his conviction and sentence. Although Matthews filed three separate motions, all are premised on alleged violations of *Brady v. Maryland*. In his Motion Pursuant to *Brady v. Maryland*, (ECF No. 103), Matthews argues that the government violated *Brady* by failing to disclose:

7

(i) the search warrant and supporting affidavit used to search his home, (ii) internet connection logs that Matthews later obtained from ICE through a Freedom of Information Act ("FOIA") request, and (iii) a subpoena to *Yahoo!* and two letters that *Yahoo!* wrote to an ICE agent in response to that subpoena, which Matthews also obtained from ICE through a FOIA request. (ECF No. 103).

In his Motion to Withdraw Plea (ECF No. 104), Matthews argues that his attorney "would not have knowingly told Mr. Matthews to plea" had he known of those documents. (ECF No. 104 at 3); (*see also*, ECF No. 103 at 4, 10, 12). Last, in his Motion to Throw Out All Evidence Against Petitioner, (ECF No. 108), Matthews asserts that the search warrant for his home was flawed because the supporting affidavit was based upon hearsay. (*Id.*). Matthews asks the Court to "throw out all the evidence gained because of the bad Affidavit and Search Warrant…." (*Id.* at 4).

The government responds that Matthews' motions effectively are § 2255 motions that are procedurally barred because Matthews did not first obtain permission from the Eleventh Circuit to file a second or successive application for post-conviction relief. (ECF No. 111 at 12-13). The government contends that if the Court were to reach the merits of Matthews' motions, it would find no *Brady* violation. The government asserts that Matthews knew of the warrant to search his home and, in any event, Matthews did not suffer prejudice because an affidavit for a search warrant can use hearsay to set forth probable cause. (*Id.* at 15-16). The government also points out that the supporting affidavit did not rely upon hearsay only; it included Matthews' post-*Miranda* admissions and the

8

observations of an additional ICE agent. (*Id*. at 16). Finally, the government argues that even if the search warrant had been suppressed, the evidence gathered by Agent Ray and Matthews' video recorded confession were sufficient to convict him. (*Id*. at 17).

With respect to Matthews' motion to withdraw his guilty plea, the government argues that the record demonstrates that his plea was knowing and voluntary. (*Id*. at 18). The government also asserts that there is no basis for Matthews to withdraw his plea because no *Brady* violation occurred. (*Id*. at 19).

As explained below, I conclude that each of Matthews' motions should be denied.

## II.  ANALYSIS

As a threshold matter, the Court must address whether Matthews' motions are procedurally barred.

As noted, Matthews previously filed a § 2255 motion, which the Court denied. Section 2255(h) requires that prisoners who want to file a successive petition to collaterally challenge their conviction must first obtain permission from the Court of Appeals. 28 U.S.C. § 2255(h).[3] Here, Eleventh Circuit precedent makes clear that Matthews' motions, which all seek relief from his conviction and sentence because of alleged *Brady* violations, are claims that must be brought pursuant to 28 U.S.C. § 2255. Specifically, the Court, in

---

[3] That provision states: "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain -- (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

9

*Tompkins v. Secretary, Dept. of Corrections*, concluded that *Brady* claims "can be and routinely are raised in initial habeas petitions" because "[t]he violation of constitutional rights asserted in these kinds of claims occur, if at all, at trial or sentencing and are ripe for inclusion in a first petition." *Tompkins v. Secretary, Dept. of Corrections*, 557 F.3d 1257, 1260 (11th Cir. 2009). For this reason, a defendant cannot assert a *Brady* violation after final adjudication of an initial habeas petition unless he satisfies the standard for filing a "second or successive" habeas motion under 28 U.S.C. § 2255(h). *Scott v. United States*, 890 F.3d 1239, 1253 (11th Cir. 2018) ("*Tompkins* [ ] requires us to conclude that second-in-time *Brady* claims are always 'second or successive'…" within the meaning of § 2255(h)'s gatekeeping provision).

Matthews does not have the Eleventh Circuit's authorization to file a second or successive petition, which leaves this Court without jurisdiction to consider the Motions. *See Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003) ("The AEDPA provides that, to file a second or successive § 2255 motion, the movant must first file an application with the appropriate court of appeals for an order authorizing the district court to consider it. 28 U.S.C. §2244(b)(3)(A). Without authorization, the district court lacks jurisdiction to consider a second or successive petition.")

If the Court were to consider Matthews' Motion to Withdraw Plea as something other than a §2255 motion, it would be barred for another reason. Pursuant to Federal Rule of Criminal Procedure 11(e), a defendant may not withdraw a guilty plea after the court imposes sentence. Instead, a guilty plea can only be set aside through direct appeal or

10

collateral attack. *See* Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."). Matthews was sentenced long ago and his Motion to Withdraw Plea is prohibited by Rule 11(e).

The Court may therefore dismiss the motions for lack of jurisdiction. A review of the merits also shows that the motions should be denied for the following reasons.

    A.    The *Brady* Motion is Without Merit

Matthews argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to provide defense counsel with copies of (i) the search warrant and Detective Jones' affidavit submitted to apply for the search warrant, (ii) internet connection logs, and (iii) a subpoena to *Yahoo!* and two letters that *Yahoo!* wrote to an ICE agent in response to that subpoena. (ECF No. 103 at 5-12).

"To establish a *Brady* violation, the defendant must show that (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002) (citation omitted). Matthews cannot satisfy any of these elements.

First, Matthews does not identify any exculpatory information in any of the documents he contends should have been disclosed. It is Matthews' burden to do so.

11

Nonetheless, the Court reviewed Detective Jones' affidavit and the internet connection logs and found no exculpatory information. As for the *Yahoo!* subpoena and *Yahoo!*'s response letters, Matthews did not provide them to the Court or describe their content. When the plain language of documents is not favorable to the defense they are not *Brady* materials. *United States v. Aguila-Urbay*, 480 Fed. App'x 564, 572 (11th Cir. 2012).

With respect to the second element, the record is not clear whether Matthews possessed the search warrant and affidavit before he pled guilty. The government asserts that it provided Matthews with, at a minimum, copies of the unexecuted search warrant and affidavit during discovery. (ECF No. 111 at 14). The government does not support its assertion with evidence, explaining that the USAO's file was purged and archived because Matthews' case is more than ten years old. (*Id*. at 3, n.3). This is understandable given how long Matthews waited to file his *Brady* motion. Given the absence of a clear record, the Court will assume that Matthews did not receive copies of the search warrant and affidavit before he pled guilty.

What is clear, though, is that Matthews and his counsel knew of the search warrant before he pled guilty. (ECF Nos. 19 at 2; 111-7 at 12). Matthews also knew that he used a *Yahoo!* chat room to communicate with Agent Ray's undercover profile. Matthews has made no showing that he could not have obtained any of the documents he claims were withheld with reasonable diligence.

Third, Matthews makes no showing that the government intentionally suppressed the documents at issue. In fact, the record reflects the opposite – that the government made

12

efforts to produce them to Matthews during discovery. In preparation for the government's Response to Standing Discovery Order, the Assistant U.S. Attorney emailed Agent Ray asking for, among other things, copies of the search warrant and affidavit. (ECF No. 111-3).

Last, and perhaps most importantly, Matthews cannot show a "reasonable probability" that the outcome of his case would have been different had the government provided him the documents he claims are *Brady* material. I address each category of documents below.

### 1. The Search Warrant

Matthews argues that the affidavit and resulting search warrant were "bad" because "[a]ll of Agent Ray's statements to Detective Jones is hearsay." (ECF No. 103 at 5, 7). Matthews evidently assumes that had his attorney received a copy of Detective Jones' affidavit, he would have successfully moved the Court to exclude from trial the evidence seized pursuant to that warrant because the warrant application included hearsay. Matthews then reasons that absent evidence of the chat logs and pornographic images found on his computer; the government would have been unable to convict him. (*Id.* at 7). These assumptions are incorrect.

An affidavit submitted in support of a search warrant application "may be based on hearsay." *United States v. Wuagneux*, 683 F.2d 1343, 1356 (11th Cir. 1982). Judges who review a search warrant application "must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, *including the veracity and*

13

*basis of knowledge of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Flowers*, 531 Fed. App'x 975, 981-82 (11th Cir. 2013). (citation and quotation marks omitted) (emphasis supplied). Detective Jones' affidavit easily satisfies this standard.

    Matthews does not challenge the veracity of Agent Ray's statements in the affidavit, and Agent Ray clearly had a reliable "basis of knowledge" because he directly communicated with Matthews in the *Yahoo!* chat room. Detective Jones' affidavit also contained plenty of non-hearsay evidence. Matthews' post-*Miranda* admissions that he possessed child pornography images on his home computer and that the "messaging archive" feature of the *Yahoo!* chat client was activated on his computer, thus preserving sexually explicit communications between Matthews and other children (of which he said there were "hundreds"), amounted to well more than probable cause that evidence would be found on his computer. (ECF No. 108 at 11). The affidavit also included an undercover ICE agent's firsthand observation that there was a computer with an attached web camera in Matthews' living room. (*Id.*). "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Sparks*, 806 F.3d 1323, 1337 (11th Cir. 2015). In sum, Detective Jones' affidavit established well more than probable cause that evidence of a crime would be found on Matthews' computer.

    In sum, assuming that Matthews did not receive the search warrant and affidavit, he cannot show that had these been provided to his attorney, there is a reasonable probability

14

that the outcome of his criminal proceeding would have been different.

### 2. The Internet Connection Logs

Matthews argues that the internet connection logs he obtained from ICE demonstrate that the government could not prove that "the communications went to California from Florida and back to Florida because the part that is needed to prove that is redacted."[4] (ECF No. 103 at 9). Matthews is not clear about this, but it seems he is addressing the interstate commerce requirement in 18 United States Code Sections 2422(b) and 2252(a)(2). At the time of Matthews' crimes, Section 2422(b) (charged in Count I) read as follows:

> Whoever, using the mail or *any facility or means of interstate or foreign commerce*…knowingly persuades, induces, entices or coerces any individual who has not attained the age of 18 years, to engage in…any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned…

18 U.S.C. § 2422(b) (2006) (emphasis added).[5]

The internet connection logs were not needed to prove that Matthews violated Section 2422(b) because proof of his use of the internet was enough to satisfy the "facility or means of interstate commerce" requirement of the statute. The Eleventh Circuit has held that "even if none of [a defendant's] communications were routed over state lines, the

---

[4] Agent Ray was located in Florida when he communicated with Matthews in the *Yahoo!* chat room. (ECF No. 1 at ¶ 6).

[5] The statue has since been amended to change the penalty.

15

internet and telephone he used to contact the undercover officer were still 'instrumentalities of interstate commerce'" sufficient to charge him under Section 2422(b). *United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (holding that § 2422(b) is constitutional as applied to a defendant who enticed a minor for sex by using the internet and telephone to contact an undercover law enforcement officer posing as the minor's parent) (citations omitted), *superseded by statute on other grounds in United States v. Jerchower*, 631 F.3d 1181 (11th Cir. 2011).

The interstate commerce language in the other crime Matthews was convicted of, Section 2252(a)(2) (charged in Count IV) was similar. That statute made it unlawful to knowingly receive or distribute "any visual depiction that…has been shipped or transported *in interstate or foreign commerce*…by any means including by computer…if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and (B) such visual depiction is of such conduct…." 18 U.S.C. § 2252(a)(2) (2006) (emphasis added).[6]

A companion statute, 18 U.S.C. § 2252A(a)(2), uses the same "interstate or foreign commerce language" and at least one decision of the Eleventh Circuit has recognized that "[t]he use of the internet to transmit or receive child pornography" is proof of that element. *United States v. Machtley*, 163 Fed. App'x 837, 839 (11th Cir. 2006) (upholding conviction

---

[6] In 2008, Congress amended the statute to add the phrase "*using any means or facility* of interstate or foreign commerce" and expanded coverage by prohibiting receipt or distribution of child pornography that has been shipped or transported "in *or affecting* interstate or foreign commerce." 18 U.S.C. § 2252(a)(2) (effective Oct. 8, 2008) (emphasis added).

for violation of 18 U.S.C. § 2252A(a)(2) which required the government to prove that images of child pornography were "mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.") The *Machtley* court recognized that "Congress has the authority to regulate the internet to prohibit its use for harmful or immoral purposes, regardless of whether that use impacts purely intrastate conduct." *Id. see also United States v. Maxwell,* 446 F.3d 1210, 1218 (11th Cir. 2006) ("it is within Congress's authority to regulate all intrastate possession of child pornography, not just that which has traveled in interstate commerce or has been produced using materials that have traveled in interstate commerce").

Other Courts of Appeal have reached the same conclusion. S*ee United States v. Lewis*, 554 F.3d 208, 215 (1st Cir. 2009) (holding that "government may satisfy the interstate commerce element [of § 2252(a)(2)] by proving that child pornography images were transmitted over the Internet.") (collecting cases).

In sum, the information redacted in the internet connection logs was not necessary to prove Matthews violated Section 2252(a)(2). As such, Matthews cannot show a reasonable probability that the outcome of his case would have been different had those documents be produced to his counsel.

        3.     *Yahoo!* Subpoena and Response

Matthews argues that the *Yahoo!* subpoena and response letters were necessary to show that ICE "legally obtained Mr. Matthews name and information to tie the Yahoo! screen name of urloved36695 to him" and that without disclosure of this evidence, the

criminal complaint and arrest warrant were invalid. (ECF No. 103 at 11). A criminal complaint is issued upon a showing of probable cause. That was set forth in Agent Ray's affidavit, which included his attestation that the usernames used to send sexually explicit communications and pornographic images to his undercover profile belonged to Matthews, and Matthews' admission that he communicated with Agent Ray's undercover profile "Laurie" and sent her images. (ECF No. 1 at ¶¶ 7, 17, 18). The government did not have to lay out all of its evidence when it filed its complaint. Moreover, the complaint was superseded by the Indictment, which was a grand jury's finding of probable cause. This argument has no merit.

    B. <u>The Motions to Withdraw Plea and Throw Out Evidence Lack Merit</u>

Matthews argues that he should be allowed to withdraw his guilty plea because his attorney "would not have knowingly told Mr. Matthews to plea" had he known of the alleged *Brady* material. (ECF No. 104 at 3, 7). This conclusory assertion is wholly speculative and based upon a flawed premise because, as explained above, Matthews fails to establish that the government committed a *Brady* violation. Similarly, Matthews' request that the Court "throw out all of the evidence gained" from the search warrant used to seize his computer, (ECF No. 108 at 4), is without merit because, as explained above, Detective Jones' affidavit provided probable cause to issue the warrant.

**III.** **RECOMMENDATION**

For the foregoing reasons, I **RESPECTFULLY RECOMMEND** that the Court **DISMISS** Matthews' Motion Pursuant to *Brady v. Maryland*, (ECF No. 103), Motion to

Withdraw the Plea, (ECF No. 104), and Motion to Throw Out All Evidence Against Petitioner, (ECF No. 108), for lack of subject matter jurisdiction and, in the alternative, in the event the Court does have jurisdiction, **DENY** those Motions on the merits.

RESPECTFULLY RECOMMENDED in chambers this 11th day of May, 2020, at Miami, Florida.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable K. Michael Moore
The Honorable Jose E. Martinez
Counsel of record

Eric Martin Matthews, Petitioner
#75804-004
Federal Correctional Institution
P.O. Box 1010
Bastrop, TX 78602

19